**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a California non-profit corporation,

Plaintiff,

vs.

SYAR INDUSTRIES, INC., a California corporation; SYAR CONCRETE, LLC, a California limited liability company;

Defendants.

Civil Case No. 2:14-CV-01255-KJM-CKD

**CONSENT DECREE**

**CONSENT DECREE**

The following Consent Decree is entered into by and between Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA"), and Defendants Syar Concrete, LLC and Syar Industries, Inc. ("Defendants"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife, and the natural resources of all waters of California, including the foothill and valley floor streams such as Markham Ravine, the Sacramento River, the American River, and the Sacramento-San Joaquin River Delta;

**WHEREAS**, Defendants are the owners and/or operators of the readymix concrete batch plant facility located at 960 Gladding Road, Lincoln, California 95648 ("Syar Facility" or "Facility");

**WHEREAS**, Plaintiff contends that Defendants discharge polluted storm water into Markham Ravine, which flows to the Sacramento River;

**WHEREAS,** Plaintiff contends that discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit NO CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on March 21, 2014, Plaintiff served Defendants, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board") with a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the CWA, 33 U.S.C. § 1365(a) and (b). The Notice Letter alleged violations of Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, and violations of the Storm Water Permit;

**WHEREAS**, on May 21, 2014, Plaintiff filed a complaint against Defendants, in the United States District Court, Eastern District of California (Case No. 2:14-CV-01255-KJM-CDK) alleging ongoing violations of the CWA (hereinafter "Complaint");

**WHEREAS**, Defendants denies all allegations in the Notice Letter and Complaint;

**WHEREAS**, Plaintiff and Defendants have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings and without any admission of liability on the part of the Defendants;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Eastern District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District.

3. The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

4. Plaintiff has standing to bring this action.

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any pending motion to enforce this Consent Decree.

## I. AGENCY REVIEW AND TERM OF CONSENT DECREE.

6. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States Environmental Protection Agency (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer within a reasonable amount of time to attempt to resolve the issue(s) raised by the Federal Agencies.

7. The term "Effective Date" as used in this Consent Decree shall mean the last day for the Federal Agencies to comment on the Consent Decree, i.e., the forty-fifth (45th) day following the

Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review, whichever occurs earlier.

8. This Consent Decree will terminate two (2) years from the Effective Date, unless there is an ongoing, unresolved dispute regarding Defendants' compliance with this Consent Decree, in which case the Consent Decree will terminate upon final resolution of the dispute.

## II. COMMITMENTS OF THE SETTLING PARTIES.

### A. Storm Water Pollution Control Best Management Practices.

9. It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act and to resolve those issues alleged by CSPA in its Complaint. In light of these objectives and as set forth fully below, Defendants agree, *inter alia*, to comply with the provisions of this Consent Decree, the requirements of the Storm Water Permit, and all applicable provisions of the CWA.

10. In addition to maintaining the current structural and non-structural Best Management Practices ("BMPs") described in the Facility's current Storm Water Pollution Prevention Plan ("SWPPP"), Defendants shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT"). Defendant shall revise the Facility's SWPPP to incorporate those BMPs.

a. **Containment of Material to Sand and Gravel Storage Areas.** Defendants shall ensure all sand and gravel storage areas are maintained to prevent migration of materials from the storage areas.

b. **Cleaning and Maintaining Conveyor Infrastructure.** Within thirty (30) days prior to the start of the 2014-2015 storm water season, Defendants shall clean the conveyor by brushing accumulated aggregate, sand, dust, and other accumulated materials from areas accessible from the existing access walkway on the conveyor and accessible portions of all conveyor support structures. Defendants shall thereafter perform similar cleaning within thirty (30) days prior to the start of each storm water season.

/////

      c. **Filtering Discharges from Western Facility Boundary.** Prior to October 1, 2014, Defendants shall install a system for collecting and filtering all storm water discharged from the western boundary of the Facility. Defendants may install a system similar to that used to collect and filter storm water that is subsequently discharged from the northeast of the Facility via a culvert to Markham Ravine. Defendants shall ensure no sheet flow from the western portion of the Facility leaves the site.

d. **Sweeping Impervious Surfaces.** Within thirty (30) days of the Effective Date, Defendants shall implement a plan that ensures all impervious areas of the Facility are swept with a regenerative sweeper weekly (during each and every week the Facility is open any day), as well as within twenty-four (24) hours of any day predicted to receive precipitation of greater than 0.1 inches and on which the Facility is scheduled to operate, provided the Facility is in operation that previous day. In the event the Facility is going to be closed more than five (5) consecutive days during the Wet Season, Defendants shall sweep on the last day the Facility is open.

e. **Preventing Pollutant Track-Off.** Within thirty (30) days of the Effective Date, Defendants shall require each concrete delivery truck, including tires, to be washed at the process water area before exiting the Facility to minimize the tracking of pollutants from the Facility to Gladding Road.

**B. SWPPP Revisions.**

11. Within thirty (30) days of the Effective Date, Defendants shall revise the Facility's SWPPP to include:

a. All current BMPs developed and implemented at the Facility;

b. All BMPs and storm water treatment requirements identified and developed pursuant to this Consent Decree;

c. Specific identification of all individuals responsible for compliance with the Storm Water Permit and this Consent Decree, including specifying which individual(s) is/are responsible for each area of compliance (e.g., John Doe, collecting samples);

d. A detailed site map that includes at a minimum all information required by the Storm Water Permit;

/////

e. A description of each industrial activity, all potential pollutant sources, and each potential pollutant associated with each industrial activity and/or pollutant source; and

f. Provisions that address all the requirements of the Storm Water Permit and this Consent Decree.

**C. <u>Storm Water Sampling and Monitoring and Reporting Plan Revisions.</u>**

12. Sampling. During the life of this Consent Decree, Defendants shall collect storm water samples from each location storm water is discharged from the Facility from at least four (4) "qualifying rain events" per Wet Season. The Facility's storm water discharge locations shall be identified on the Facility site map which shall be included in the SWPPP and Monitoring and Reporting ("M&RP"). All sampling shall be conducted as described in subparagraphs a. through i. below.

a. A "qualifying rain event" is one where: (1) a discharge occurs during operating hours, and (2) there was no storm water discharge for three (3) days prior to the rain event.

b. If, prior to March 1, Defendants has been unable to collect samples from four (4) qualifying storm events, Defendants shall satisfy the sampling requirements of this Consent Decree by sampling discharges occurring during normal operating hours and without regard to the Storm Water Permit requirements that the sample be collected during the first hour of storm water discharge or that the storm water discharge be preceded by three (3) working days without storm water discharge.

c. Defendants shall analyze each storm water sample for the contaminants set forth in Table 1.[1]

d. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

e. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below the values specified in Table 1.

f. All samples collected from the Facility shall be delivered to the laboratory as necessary to ensure that sample "hold time" is not exceeded for each contaminant listed in Table 1.

/////

---

[1] Defendants may discontinue sampling for mercury if two consecutive samples contain mercury at levels below the Table 1 level.

   g. Defendants shall request that sample analysis results be reported to it within ten (10) days of laboratory receipt of the sample, or as soon as possible without incurring "rush" charges.

h. Defendants shall request that all sample results for metals be reported by the laboratory in total concentrations.

i. Defendants shall provide CSPA with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all samples collected at the Facility, within five (5) days of receiving the results.

13. Monitoring & Reporting Plan ("M&RP") Revisions. Within thirty (30) days of the Effective Date, Defendants shall revise the Facility's M&RP to include:

a. The sampling requirements set forth in this Consent Decree;

b. Specific identification of all individuals responsible for implementing the storm water sampling and monitoring requirements of the Storm Water Permit and this Consent Decree, including specifying which individual is responsible for each area of compliance (e.g., John Doe, collecting samples); and

c. Provisions that address all the requirements of the Storm Water Permit and this Consent Decree.

**D. Total Nitrogen Source Identification and Control**

14. Defendants shall develop and implement a plan to control the discharge of total nitrogen from the Facility as follows:

a. Within thirty (30) days of the Effective Date, Defendants shall prepare a work plan for identifying the source of total nitrogen in Defendants' storm water discharges ("Total Nitrogen Source Identification Work Plan"). The Total Nitrogen Source Identification Work Plan shall include a schedule for identifying the source of total nitrogen in Defendants' discharges over the course of the 2014-2015 wet season. Defendants shall submit the Total Nitrogen Source Identification Work Plan to CSPA for review and comment. CSPA shall review the Total Nitrogen Source Identification Work Plan and provide any comments within ten (10) days of receipt. Within ten (10) days of receipt of comments from CSPA, Defendants shall incorporate CSPA's comments into the Total Nitrogen Source Identification Work Plan, or shall justify in writing why any comment is not incorporated. Any disputes

over the adequacy of the Total Nitrogen Source Identification Work Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

b. By October 1, 2015, Defendants shall implement a plan to control total nitrogen in their discharges from the Facility ("Total Nitrogen Control Plan"). The Total Nitrogen Control Plan shall include source control measures and/or treatment technologies that are designed to ensure that discharges form the Facility do not contain total nitrogen concentrations in excess of those set forth below in Table 1. By June 30, 2015, Defendants shall submit the draft Total Nitrogen Control Plan to CSPA for review and comment. CSPA shall review the draft Total Nitrogen Control Plan and provide any comments within thirty (30) days of receipt. Within thirty (30) days of receipt of comments from CSPA, Defendants shall incorporate CSPA's comments into the Total Nitrogen Control Plan, or shall justify in writing why any comment is not incorporated. Any disputes over the adequacy of the Total Nitrogen Control Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

**E. <u>Reduction of Pollutants in Discharges.</u>**

15. <u>Contaminant Reduction</u>. Discharges shall not contain levels of pollutants above the limits set forth below in Table 1.

**Table 1. Numeric Values for Facility Discharges**

| Contaminant | Value | Source of Value |
|---|---|---|
| Total Suspended Solids | 100 mg/L | 2008 EPA Benchmark |
| Total Recoverable Copper[2] | 0.0123 mg/L | 2008 EPA Benchmark |
| Oil and Grease | 15 mg/L | 2008 EPA Benchmark |
| Total Recoverable Aluminum | 0.750 mg/L | 2008 EPA Benchmark |
| Total Recoverable Iron | 1.0 mg/L | 2008 EPA Benchmark |
| Total Recoverable Mercury | 0.0014 mg/L | 2008 EPA Benchmark |
| Chemical Oxygen Demand | 120 mg/L | 2008 EPA Benchmark |
| pH | 6.5-8.5 units | Basin Plan |
| N+N | 0.68 mg/L | 2008 EPA Benchmark |

/////

[2] Defendants may adjust the benchmark value for copper using the methods provided for in Appendix J to the EPA 2008 MSG Permit, in which case the adjusted hardness value shall replace the value currently provided in Table 1.

16. Action Plan for Table 1 Exceedances. If the result(s) from any sampling event(s) conducted during a Wet Season[3] reveals any contaminant at a concentration above the numeric values specified in Table 1, Defendants shall submit a plan to Plaintiff for reducing the level of the contaminant(s) to Table 1 levels ("Action Plan"). An Action Plan shall be submitted by June 1 following the Wet Season during which the numeric value exceedance(s) occurs.

17. Action Plan Requirements. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric value(s); (2) an assessment of the source of each contaminant discharged in excess of the numeric value(s); (3) the identification of additional BMPs, including improved treatment of storm water prior to discharge from the Facility, that will reduce pollutant concentrations; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible but at least by the beginning of the upcoming Wet Season (i.e., by October 1) unless the Settling Parties agree on a later date based on the time needed to design, procure, and install the necessary equipment. Any disputes over the deadline for implementation of additional BMPs identified in an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree set out in Section III below.

18. Action Plan Review. CSPA shall have thirty (30) days from receipt of Defendants' Action Plan to provide Defendants with comments on the Action Plan. Within fifteen (15) days of Defendants' receipt of CSPA's comments on the Action Plan, Defendants shall consider CSPA's comments and shall either incorporate them into the Action Plan or, if Defendants declines to accept one or more of CSPA's comments, provide CSPA with a written explanation of the grounds for rejection. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree set out in Section III below.

/////

[3] The Wet Season is October 1 – May 30.

19. Defendants shall contact Plaintiff to request an extension of any deadline set forth in this Consent Decree, if necessary, to implement any structural BMPs requiring agency approval. Plaintiff's consent to Defendants' requested extension shall not be unreasonably withheld.

20. Defendants shall revise its SWPPP and/or M&RP as applicable within thirty (30) days of receipt of Plaintiff's comments to reflect the changes to the Action Plan. Defendants shall notify CSPA in writing when the Action Plan has been completely implemented, and the SWPPP and/or M&RP has been revised.

**F. Visual Observations.**

21. All visual observations shall be conducted in accordance with the terms of the Storm Water Permit and this Consent Decree. During the life of this Consent Decree, Defendants shall conduct visual observations at each point where storm water is discharged during each qualifying rain event. Defendants shall maintain logs of the visual observations, which shall be included in Defendants' Annual Reports submitted to the Regional Board, and within ten (10) days of Plaintiff's written request.

**G. Employee Training.**

22. Within sixty (60) days of the Effective Date, Defendants shall conduct additional employee training in order to familiarize employees at the Facility with the requirements of the Storm Water Permit and this Consent Decree. The training program shall include use of written training materials needed for effective implementation of the training program. Defendants shall also ensure that there are a sufficient number of employees assigned to implement the BMPs and conduct other compliance activities required by the Storm Water Permit and this Consent Decree, and that these employees are properly trained to perform the required activities.

23. The training program shall require at least the following:

a. Non-Storm Water Discharge Training. Defendants shall train employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which can result from improper practices that may produce non-storm water discharges at the Facility, and how to detect and prevent them.

b. BMP Training. Defendants shall train employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent or minimize the exposure of

pollutants to storm water, to prevent or minimize the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility.

c. <u>Sampling Training</u>. Defendants shall designate an adequate number of employees to ensure the collection of storm water samples from each discharge location as required by this Consent Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

d. <u>Visual Observation Training</u>. Defendants shall provide training to all individuals performing visual observations at the Facility pursuant to this Consent Decree and/or the Storm Water Permit, including when visual observations are required, the different types of visual observations required, and instruction on proper record keeping under the Storm Water Permit.

24. Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of Defendants who is familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated as necessary to ensure that employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the Facility's SWPPP and M&RP, as appropriate to the particular employee's job descriptions. Any new employee who is responsible for implementation of any portion of the SWPPP, the M&RP, or compliance with other terms of the Storm Water Permit or Consent Decree shall receive training within ten (10) days after being hired, or before being responsible for compliance with the terms of the Storm Water Permit or Consent Decree.

25. Defendants shall maintain training records to document compliance with Section II.G of this Consent Decree, and shall make these records available for Plaintiff's review at the Facility. The Training Program shall be specified in the SWPPP and Defendants shall modify the SWPPP as necessary to reflect the training program required by this Consent Decree.

**H. <u>Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan Revisions.</u>**

26. <u>Ongoing Duty to Revise SWPPP and M&RP</u>. Defendants shall revise the SWPPP and M&RP if there are any changes in the Facility's operations that may possibly affect the quality of storm water discharges at the Facility, including but not limited to changes to storm water discharge point(s) or

changes or additions to the BMPs at the Facility resulting from an Action Plan. Defendants shall submit any revised SWPPP and M&RP to CSPA for review and comment within five (5) days of completion. CSPA shall provide comments, if any, to Defendants within thirty (30) days of receipt of any revised SWPPP and M&RP. Within thirty (30) days of receiving comments from CSPA, Defendants shall incorporate CSPA's comments into any revised SWPPP and M&RP or shall justify in writing why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

**I. <u>Commenting on the SWPPP and M&RP Revisions.</u>**

27. Defendants shall submit the revised SWPPP and M&RP required by paragraphs Sections II.B and II.C above to CSPA for review and comment as soon as they are completed. CSPA shall provide comments, if any, to Defendants within thirty (30) days of receipt of the revised SWPPP and M&RP. Within thirty (30) days of receipt of comments from CSPA, Defendants shall incorporate CSPA's comments into the SWPPP and M&RP, or shall justify in writing why any comment is not incorporated. Any disputes over the adequacy of the revised SWPPP and M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

**J. <u>Compliance Monitoring and Reporting.</u>**

28. <u>Site Inspections</u>. Plaintiff and its representatives may conduct three (3) site inspections at the Facility during the life of this Consent Decree, plus an additional inspection if there is a dispute regarding compliance with the terms of this Consent Decree. The site inspections shall occur during normal business hours, and Plaintiff shall provide Defendants with three (3) days notice of an intended inspection. If an inspection is noticed during the Wet Season, CSPA will continue to follow the weather forecast, and will confirm the inspection at least twenty-four (24) hours prior to the start of the inspection in an effort to ensure CSPA is present during a rain event producing a discharge during the inspection.

29. During the site inspection, Plaintiff and/or its representatives shall be allowed access to the Facility's SWPPP, M&RP, and other monitoring records, reports, and sampling data for the Facility. In addition, during the site inspection, Plaintiff and/or its representatives may collect samples of

discharges from the Facility. If Plaintiff and/or its representatives collect samples, Syar shall be given an opportunity to collect a sample at the same location immediately following (or prior to) Plaintiff. Results of sampling must be exchanged.  Any samples collected by either party shall be submitted to a certified California laboratory for analysis in accordance with the provisions of Section II.C of this Consent Decree. Copies of the complete laboratory reports shall be provided to the other party within five (5) business days of receipt.

30.     Compliance Monitoring and Oversight. Defendants shall pay ten thousand ($10,000.00) to fund Plaintiff's costs of monitoring and overseeing Defendants' compliance with this Consent Decree (including review of the plans identified in paragraph 14 and, if any, the plans identified in paragraphs 16 and 17). Payment shall be made within sixty (60) days after the Effective Date. Defendants' check shall be made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and shall be delivered by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129. Any unexpended funds remaining at the termination of this Consent Decree shall be refunded to Defendants within ten (10) business days after the date of termination.

31.     Reporting and Documents. During the life of this Consent Decree, Defendants shall copy Plaintiff on all documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Plaintiff within five (5) days of submission to the agencies and/or municipalities. Any correspondence related to Defendants' compliance with the Storm Water Permit or storm water quality received by Defendants from any regulatory agency, State or local agency, county or municipality shall be provided to CSPA within five (5) calendar days of receipt by Defendants.

**K.     Environmental Project, Litigation Fees and Costs, and Stipulated Penalties.**

32.     Environmental Mitigation Project. To remediate environmental harms as alleged in the Complaint, Defendants shall pay Thirty Thousand Dollars ($30,000.00) to be used to fund environmental project activities that will benefit the Sacramento-San Joaquin River Delta and its watershed ("the Mitigation Payment"). The Mitigation Payment shall be paid to the Rose Foundation for Communities and the Environment, and mailed via certified mail or overnight delivery to: 6008 College

Avenue, Suite 10, Oakland, California 94618, Attention: Tim Little. The Mitigation Payment shall be made within ninety (90) days of the Effective Date, and Defendants shall concurrently provide Plaintiff with a copy of such payment. No funds from such payment shall be used for investigation of, or litigation or advocacy against, Syar or any of its affiliates.

33. CSPA's Fees and Costs. Defendants shall partially reimburse CSPA for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and preparing this lawsuit and negotiating a resolution of this matter, in an amount totaling Forty Seven Thousand Dollars ($47,000.00). Such payment shall be made within thirty (30) days of the Effective Date, payable to: "Lawyers for Clean Water Attorney Client Trust Account" and delivered by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129.

34. Interest Payments. In the event of late payment of any of the sums due under this Consent Decree, the Defendants shall pay ten percent (10%) APR interest to Plaintiff, which shall accrue from the first day past the date the payment was due until the date Defendants tenders payment. All such payments shall be made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and delivered by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129.

## III. DISPUTE RESOLUTION.

35. This Court shall retain jurisdiction over this matter until the Consent Decree terminates in accordance with Paragraph 8 for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

36. Meet and Confer. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of twenty (20) calendar days from the date of the notice.

37. If the Settling Parties cannot resolve a dispute by the end of informal meet and confer negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Eastern District of California. The Settling Parties agree not to object to an expedited hearing schedule on the motion if requested by one of the Settling Parties.

38. Burden of Proof. In the event of any disagreement or dispute between Plaintiff and Defendants over the necessity or appropriateness of implementing any particular BMP or set of BMPs, including in any formal or informal proceeding brought to enforce the terms of this Consent Decree, Defendants shall bear the burden of demonstrating that its BMPs, collectively, constitute BAT/BCT for the Facility, or that they are in compliance with the terms of this Consent Decree. Plaintiff shall not be required to prove that Defendants' BMPs do not constitute BAT/BCT.

39. Litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by Sections 505 and 309 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting those provisions.

**IV. MUTUAL RELEASE OF LIABILITY.**

40. CSPA's Release. Upon the Effective Date of this Consent Decree, CSPA, on its own behalf and on behalf of its current and former officers, directors, employees, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Defendants and each of its current and former officers, directors, members, employees, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives from, and waives all claims which arise from or pertain to, this action, including all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed, and/or claims that were asserted in CSPA's Complaint up to the Effective Date.

41. Defendants' Release. Upon the Effective Date of this Consent Decree, Defendants, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of

their successors and assigns, and its agents, attorneys, and other representatives releases CSPA (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters associated with or related to CSPA's Complaint up to the Effective Date.

42. Nothing in this Consent Decree limits or otherwise affects CSPA's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to storm water discharges from the Facility occurring or arising after the Effective Date of the Consent Decree, but specifically excluding the discharges and all other matters addressed by this Consent Decree.

## V. MISCELLANEOUS PROVISIONS.

43. No Admission of Liability. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44. Force Majeure. Force Majeure includes any act of God, war, fire, earthquake, or natural catastrophe; civil disturbance, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental agency. Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the force majeure event and that, by exercise of due diligence, it has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any force majeure event.

/////

/////

45. Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

46. Choice of Law. The laws of the United States shall govern this Consent Decree.

47. Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

48. Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by overnight mail, or via electronic mail, with email confirmation of receipt by the receiving party, to the following individuals:

If to Plaintiff:

Drevet Hunt
drev@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004-A O'Reilly Avenue
San Francisco, California 94129

California Sportfishing Protection Alliance
Bill Jennings, Executive Director
Deltakeep@me.com
3536 Rainier Avenue
Stockton, California 95204

If to Defendants:

Toby Goyette
Environmental Manager
Syar Industries, Inc.
2301 Napa-Vallejo Highway
P.O. Box 2540
Napa, CA 94558
tgoyette@syar.com

Michael D. Corrigan
Assistant General Counsel
Syar Industries, Inc.
2301 Napa-Vallejo Highway
P.O. Box 2540
Napa, CA 94558
mcorrigan@syar.com

With copies to:

Chris Carr
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
ccarr@mofo.com

Any change of address or addresses shall be communicated in the manner described above for giving notices. In addition, the Settling Parties may agree to transmit documents electronically or by facsimile.

49. Effect of Consent Decree. Except as provided herein, Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendants to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree.

50. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

51. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

52. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

53. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

54. Authority. The undersigned representatives for Plaintiff and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

55. The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

56. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent

/////

Decree, the Defendants does not admit liability for any purpose as to any allegation or matter arising out of this Action.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.

Having considered the foregoing, and also having reviewed the letter from the U.S. Department of Justice filed on November 14, 2014, **IT IS SO ORDERED:**

Date: February 9, 2015.

UNITED STATES DISTRICT JUDGE